RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE 6/9/06
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| ALLAN GARLINGTON | DOCKET NO. 05-CV-1550; SEC. P |
|---|---|
| VERSUS | JUDGE DRELL |
| CALVIN MCFERRIN, ET AL | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Before the Court is an application for writ of *habeas corpus* filed on August 31, 2005, by pro se petitioner Allan Garlington ("Garlington"). Garlington is incarcerated at the Natchitoches Parish Detention Center in Natchitoches, Louisiana.

### FACTS AND PROCEDURAL HISTORY

Garlington pled guilty to and was convicted of one count of manufacture of a controlled dangerous substance, schedule two, and one count of possession of a controlled dangerous substance, schedule two, with the intent to distribute. The conviction was obtained through a guilty plea on February 18, 2003, in the Eighth Judicial District Court of Louisiana, Parish of Winn. Garlington's attorney negotiated a plea agreement wherein Garlington would plead guilty to two counts and received two agreed-upon concurrent sentences of fifteen years of hard labor, the first ten without the benefit of parole, probation, or suspension of sentence. In exchange for the guilty plea, the state dismissed a third charge

and agreed not to seek to adjudicate Garlington as a habitual offender. (Doc. 1-4, Exhibit p. 15-33.) Garlington filed no direct appeal of his conviction or sentence, but did file an application for post-conviction relief on or about August 24, 2004. The application was denied on August 26, 2004. Garlington sought review by the Louisiana Second Circuit Court of Appeal, which was denied on October 14, 2004. Garlington filed an application for supervisory and/or remedial writs with the Louisiana Supreme Court. His application was denied on August 19, 2005.

Finally, Garlington filed a Petition for Writ of Habeas Corpus in this Court on August 31, 2005. The petition was timely filed, and the issues raised therein were raised in Garlington's application for post-conviction relief.

## Rule 8(a) Resolution

This court is able to resolve the merits of this *habeas corpus* petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court record provides the required and adequate factual basis necessary to the resolution of the *habeas corpus* petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

LAW AND ANALYSIS

In support of his application for *habeas corpus* relief, Petitioner claims that:

(1) His court appointed counsel provided ineffective assistance by failing to interview witnesses and forcing Garlington to plead guilty;

(2) He was under the influence of medication at the time of the plea and did not know what he was doing;

(3) He was entitled to, but did not receive, an evidentiary hearing on his Post Conviction Relief application.

ISSUE NO. 1 - Ineffective Assistance of Counsel

Garlington asserts that his counsel was not properly prepared for trial and "forcing" Garlington to plead guilty. The Supreme Court established a test for evaluating an ineffective assistance claim:

> "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, **the defendant must show that counsel's performance was deficient.** This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, **the defendant must show that the deficient performance prejudiced the defense.** This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687 (1984)(emphasis added).

Garlington claims that he tried to get his attorney, Robert

4

Noel, to interview witnesses who could prove he was not guilty of the crimes charged. Specifically, Garlington refers to potential witnesses and co-defendants Micky Box and Jake Moss, as well his ex-wife, Cindy Garlington. Although Mr. Noel did not interview these individuals, he was provided, through discovery, with every document in the prosecution's possession, including the statements of those witnesses. (R. 78.)

Furthermore, while Garlington asserts that their testimony would exonerate him, the statements of those individuals actually tend to incriminate Garlington. For example, Tonya Bowers stated that she met Scotty through Garlington, that she went to Garlington's house after cooking meth with other co-defendants, and that Garlington had meth ingredients in a shed behind his house. (R. 130-141.) Jake Moss indicated in his statement to the police that he saw Garlington prepare spoons and needles to use narcotics. (R. 153.) Cindy Garlington's statement indicated that she and her ex-husband were present in the home where meth was being made. (R. 172-174.) Micky Box's statement to the police was that Garlington was at Box's home, and that Garlington had a drug problem all of his life. Box stated that he "suspected anything when Allan's around." (R. 166.)

Review under Strickland is highly deferential. To show prejudice, the claimant must show a reasonable probability that, but for counsel's unprofessional errors, the results of the

5

proceedings would have been different. See Strickland, 466 U.S. at 694. Furthermore, as the Louisiana appellate court stated, "A validly entered guilty plea waives any right a defendant might have had to question the merit's of the state's case and the factual basis underlying the conviction." (R. 252.) Even assuming that Garlington could show that his counsel's performance was deficient, which the court is not suggesting, Garlington could not show that the results of the proceedings would have been any different had he been represented by other counsel and/or not entered a guilty plea.

In fact, without the plea agreement, Garlington was facing an additional charge, as well as a habitual offender enhancement. According to the State, because of Garlington's "rap sheet," which includes over twenty arrests in just as many years, Garlington would have been facing life imprisonment as a habitual offender. Additionally, prior to Mr. Noel's appointment, Garlington had been represented by three other attorneys who all withdrew from the case. (Doc. #9, p.4; Doc. 1-3, p.18.) Mr. Noel negotiated a plea agreement whereby Garlington would served fifteen years, the first ten without the benefit of parole, probation, or suspension of sentence. This spared Garlington the possibility of an unquestionably more severe sentence.

Finally, Garlington's allegation that he was forced to plead guilty under duress is disingenuous. Garlington was represented by a total of four attorneys, three of whom suggested he plead guilty

given the evidence against him. Garlington asserts that he was "coerced" into pleading guilty by Mr. Noel "repeatedly informing him that he must answer correctly or go to trial." (Doc. #1-3, p.20.) Such a statement is by no means coercive. Furthermore, the judge asked Garlington numerous times if he wanted to plead guilty, and each time, Garlington responded "yes." (Doc. #1-4, p.21-28.) The judge specifically asked Garlington, under oath, "Are you satisfied your attorney has competently represented you in this proceeding?" Garlington responded, "Yes, sir." (Doc. #1-4, p.23-24.) While he now asserts that he was forced to plead guilty, Garlington testified, more than once, that he was "freely and voluntarily" pleading guilty and that he had not been threatened in any way to plead guilty. (Doc. #1-4, p.25-26.)

Garlington has not presented evidence that his attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Furthermore, Garlington has not established that he was denied a fair trial. He voluntarily pled guilty in order to avoid the risk of a much more severe sentence.

ISSUE NO. 2 - Capacity to Enter Guilty Plea

Garlington next argues that he lacked capacity to voluntarily enter a guilty plea because he was under the influence of drugs at the time the plea was made. Specifically, Garlington claims that, because he took three times his usual dosage of Elavil, an

antidepressant, he "barely knew what was going on in court" and "could not understand the nature of the charges he was pleading to, or the consequences of his guilty plea." (Doc. #1-3, p.23.)

First, in opposition to Garlington's claims, the defense submitted an affidavit of the Winn Parish Jail Warden, Raymond Whittington, who stated that medication is administered to each inmate, in the prescribed dosage, in a small paper cup. (Doc. #9, Attach. 2.) Whittington testified that Garlington did not have access to medication in any quantity other than that prescribed and administered each day.

Additionally, while Garlington claims that he "barely knew" what was going on in court due to his "drug induced condition," he did manage to stand in court, before the judge, and answer all of the questions presented by the judge for the purpose of verifying Garlington's capacity. Specifically, Garlington was able to advise the court of his date of birth, education, and work experience. The judge specifically told Garlington, "[The] purpose of my questions is to make sure you understand everything here today." (Doc. #1-4, p.20.) Garlington went on to state that he understood each charge, understood the plea agreement, and understood the sentence that would be imposed. Additionally, Garlington received a written copy of the plea agreement, which he reviewed with his attorney during a court recess. Most significantly, Garlington answered affirmatively to at least *twenty-five* questions from the

8

judge regarding whether he understood what was happening that day in court. Garlington's claim that his plea was unconstitutional because he took three times the prescribed dosage of antidepressant and lacked capacity is not supported by the record.

ISSUE NO. 3 - Evidentiary Hearing

Finally, Garlington claims that he was entitled to a hearing on his Post Conviction Relief application pursuant to Louisiana Criminal Code article 930. However, Article 929 of that code states that, if the court determines that the factual and legal issues can be resolved based upon the application and answer and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief *without* conducting an evidentiary hearing. Only when there are questions of fact that cannot properly be resolved pursuant article 929 must an evidentiary hearing be ordered. The state court determined that the factual and legal issues could be resolved without such a hearing.

The undersigned also notes that the role of a federal habeas court is more limited than that of the state appellate court. Federal courts "do not sit as a super state supreme court[s] to review error under state law." Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983); *citations omitted*. "An evidentiary error in a state trial does not justify federal habeas corpus relief unless

9

it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." Id.

Ultimately, Garlington did not have to plead guilty, and was advised by counsel that he had the alternative of pleading "not guilty" and going to trial. Garlington made a choice to accept a sure fifteen year sentence, which his counsel had bargained for with the prosecutor, as opposed to a possible life sentence as a habitual offender.

## Conclusion

Based on the foregoing discussion, Garlington has not presented claims to the court that warrant relief. Therefore, IT IS RECOMMENDED that Garlington's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

**WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 9th day of June, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE